Joxnes J.
This is an action of debt upon a single bill brought by William Churn against John H. Powell, Jackson B. Powell, George S. Powell and A. J. Ward. The bond, as written, purports to be the bond of John H. Powell as principal, and of the other parties and Robert W° Powell as securities. It was not executed by Robert W. Powell, a vacant space and seal being left for his name between those of Jackson B. Powell and George S. Powell. John H. Powell suffered judgment by default. The other defendants craved oyer of the writing in the declaration mentioned, and pleaded jointly three pleas, upon each of which the plaintiffs took issue. The first plea alleges that the said writing was made and signed by the said defendants, and by them delivered as an escrow (not stating to whom it was so delivered) “on the express condition, and none other, that Robert W. Powell, whose name is in the body of the said writing, should sign and seal it as his own act and deed, and should become bound jointly and equally with them, the said J. B. Powell, G. S. Powell and A. J. Ward as securities,” &c., for the sum, &c.; “ and if the said Robert W. Powell should refuse or fail to sign, seal and deliver the said writing as joint coobligor of the said defendants, the same was not to bind the said defendants, but was to be held null and void and of no effect.” The plea then avers that the said Robert W. Powell did not so sign, seal and deliver the said writing, whereby the same became discharged, annulled and vacated, and so is not the deed of the defendants; conclud *804 ing to the country. The second plea is like the first, substantially, except that it alleges that the said writing was delivered by the said defendants to William Churn, the obligee therein, as an escrow, on condition, &c. The third plea is a general plea of non est factum.
On the trial the defendants moved the court to give an instruction to the jury, .which was refused; and the defendants excepted. The bill of exceptions certifies that the defendant Ward wrote the bond in the declaration mentioned, at the request of John H. Powell, the principal ; “ that at the time of writing the said bond, the said Ward executed it upon condition that all the other securities named therein should also execute it, but the plaintiff Churn was not present at the time, nor was it proved that said Churn was informed when the said paper was handed to him, or at any other time, that the said Ward had executed it upon any condition; and the said Churn proved that he never was so informed. It. was also proved that the defendant G„ S. Powell executed the said paper at a different time and place, and that at the time he did so, he declared that he executed it upon condition that Robert W. Powell, whose name is mentioned in the body of the bond, should also execute it; but there was no proof that this was ever communicated to the plaintiff Churn, or that he was present when G. S. Powell executed said paper; and it was proved by said Churn that he was not informed of any such condition.” Thereupon the counsel for the defendants moved the court to instruct the jur’y as follows: “If the jury believe from the evidence, that the defendants A. J. Ward and G. S. Powell executed the bond filed with the declaration in this case, upon condition that Robert W. Powell, whose name is inserted in the body of it, should also execute it as surety for John H. Powell, the principal obligor mentioned in said bond, then and in that case the jury are bound to find the issues for the defend *805 ants.” The court said it would give the instruction with the addition, “provided that the plaintiff was informed that these defendants0 had executed the bond upon that condition;” to which addition the defendants objected; and the court refused to give the instruction asked otherwise than with that addition; to which refusal to give the instruction as asked the defendants excepted. It does not appear that any instruction was given. The only question, therefore, on this bill of exceptions is, whether the court properly refused to give the instruction askedofor.
The law in relation to escrows is thus stated in the Touchstone, p. 57: “ The delivery of a deed as an escrow is said to be when one doth make and seal a deed and deliver it unto a stranger, until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed. And so a man may deliver a deed, and such delivery is good. But in this case two cautions must be heeded: 1. That the form of words used in the delivery of a deed in this manner be apt and proper. 2. That the deed be delivered to one that is a stranger to it, and not to the party himself to whom it is made.” The author then proceeds to explain what are the “ apt and proper ” words for such a delivery. But at the present day, no particular form of words is necessary, nor is it necessary that the condition should be declared in express words at the time of the delivery. It is only necessary that it should distinctly appear, from all the facts and circumstances attending the execution and delivery, that the instrument was not to take effect as a deed until a certain condition should be performed. Murray v. Earl of Stair, 2 Barn. & Cres. 82, (9 Eng. C. L. R. 33;) Parke B. in Bowker v. Burdekin, 11 Mees. & Welsb. R. 127; 2 Washb. Real Prop. 585.
In reference to the second “caution,” the author adds: “Eor if I seal my deed and deliver it to the party himself *806 to whom it is made, as an escrow, upon certain conditions, &c., in this case, let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently, and the party is not bound to perform the conditions; for in traditionibus chartarum, non quod dictum est, sed quod factum est inspicitur.” The same law is laid down by Lord Coke in his first Institute, 36a, and more at large in Thorowgood’s Case, 9 Rep. 137, where the contrary decision in Hawksland v. Gatchel, Cro. Eliz. 835, is said to have been made ex improviso. And it has been often held in this country that a deed cannot be delivered as an escrow to the party to whom it is made, and that such a delivery will enure as an absolute delivery, whatever may have been the intention. Fireman’s Ins. Co. v. McMillan, 29 Alab. R. 147, and cases there cited.
A doctrine which thus overrules and disregards the intention of the parties is strict and technical to the last degree. Preston does not appear to have considered it as the law at his day. Eor, in his edition of the Touchstone, immediately after the passage just quoted from that work, he adds the following: “At this day, the jury would be directed to draw their conclusion from all the circumstances.” The obvious meaning is, that the jury would be directed to ascertain from all the’circumstances—words as well as acts—whether it was the real intention that the delivery should be absolute or conditional. In Hudson v. Revett, 5 Bingh. R. 368, (15 Eng. C. L. R. 467,) Chief Justice Best, after quoting from Comyn Big. Eaits, A 3, the doctrine which I have quoted from the Touchstone, makes these remarks: “ The authorities referred to in the text in support of this position are at least conflicting; but in the next division (A 4) it appears that this position about delivery as an escrow is merely a technical subtlety; for the learned author says: ‘If it be delivered to the *807 party as an escrow, to be his deed on the performance of a condition, it is not his deed till the condition is performed, though the party happens to have it before the condition is performed.’ This he lays down on his own authority, without referring to any case ; and I am warranted in saying, that we cannot have a better authority than that learned writer.”
The doctrine laid down in the Touchstone and by Lord Coke has been said to apply only to deeds conveying title, and not to bonds, (Campbell J. in People v. Bostwick, 32 N. Y. R. 445,) though I do not remember to have seen it stated elsewhere with that limitation. In Hicks v. Goode, 12 Leigh 479, Judge Cabell made some comments on this doctrine and on the reasons assigned for it, and expressed the opinion that it rests on technical and unsatisfactory grounds. He did not controvert its existence, however, as a rule of law; nor is it necessary for me to do so in the present case. I mean to express no opinion on the subject.
But the court held, in Hicks v. Goode, that this doctrine is applicable only to the case of deeds which are, on their face, complete contracts, requiring nothing but delivery to .make them perfect according to the intention of the parties; and that it is not applicable to deeds which, on their face, import that something more is to be done besides delivery to make them complete and perfect contracts according to the intention of the parties. And accordingly it was held, in that case, that this doctrine was not applicable to a bond which was drawn as the joint bond of two parties named in it, with two seals affixed, but which was executed by only one of them. It does not distinctly appear whether Judge Allen did or did not concur with the other judges on this point. But even if he did not concur, the point was decided by a majority of the whole court, and the decision is, therefore, a binding au *808 thority. And this decision is sustained by numerous cases, which either decide or concede, that where an instrument indicates on its face that others were to execute it besides those who did execute it, it may be shown by evidence that the delivery, though made to the grantee or obligee, was conditional upon the execution of the instrument by the other parties, and not absolute. Cutter v. Whittemore, 10 Mass. R. 442; Chandler v. Temple, 4 Cush. R. 285; Parker v. Bradley, 2 Hill R. N. Y. 584; Brackett v. Barney, 28 N. Y. R. 333; Grim v. School Directors, &c. 51 Penn. R. 219: Fletcher v. Austin, 11 Verm. R. 447. See also Bowker v. Burdekin, supra; Cumberlege v. Lawson, 1 Com. Bench N. S. 709 (87 Eng. C. L. R.); Evans v. Bremridge, 35 Eng. L. & Eq. R. 397.
The question then arises, whether the fact that a deed or bond in the hands of the grantee or obligee indicates, on its face, that it was intended that others should execute it besides those who did execute it, is sufficient of itself to raise a presumption that it was delivered upon a condition that the parties who executed it should not be bound until it should be executed by the other parties named in it. Judge Cabell, in the case of Hicks v. Goode, intimates an opinion that the face of the paper in such a case would be evidence of a conditional delivery, and that the defendants might perhaps avail themselves of the objection by demurrer to the declaration. He waived a decision of the question, however, because it did not arise in the case. I do not think that the opinion thus intimated is well founded. The, face of the paper in such a case affords evidence of the most satisfactory character, of an original intention or expectation that it was to be executed by all the parties named in it. The original intention, however, may not have been adhered to. A party who has executed the paper may waive its execution by some or all of the other parties. He may do this, although the instrument was *809 drawn as the joint bond of the parties named in it, and not as their joint and several bond. Where the instrument, fully executed as to one or more of the parties, is found in the hands of the obligee, I think it should be presumed, in the absence of all other evidence on the subject, that it was duly delivered as the deed of those who have executed it. It is a well-settled principle, that where a deed is found in the possession of the party to whom it is made, it will be presumed to have been duly delivered to him. Vanhook v. Barnett, 4 Dev. R. 268; Fireman’s Ins. Co. v. McMillan, supra; and eases cited. Such a presumption is consistent with the face of the paper, even where it imports an original intention that others should execute it. To make this presumption in such a case does no injustice to those who have executed the paper. They may still show how the fact really is. They may also protect themselves against any inconvenience that may arise from such a presumption, in the first instance, by taking care to keep the instrument out of the hands of the grantee or obligee until it is fully consummated according to their intention. The obligee or grantee, on the other hand, has full notice from the face of the paper of the original intention of those who signed it, and he can not complain if they are allowed to prove that this original intention was not relinquished in the delivery. He should either refuse to accept the paper in its existing shape, or be prepared to repel the defence of a conditional delivery. It has accordingly been held, in numerous cases, that where an instrument which shows on its face that it was to be executed by other persons besides those who have executed it, is found in the hands of the party to whom it is made, it will be” presumed, in the absence of evidence, to have been duly delivered as the deed of those whose names are signed to it. Cox v. Thomas’ adm’r, 9 Gratt. 312 ; Bowker v. Burdekin, supra; the cases above cited from *810 10 Mass. R. 442; 4 Cush. R. 285; 2 Hill R. 584, and 51 Penn. R. 219; Williams v. Springs, 7 Iredell Law R. 384; Governor v. Kellett, 11 Georgia R. 286; in which last case the subject is fully discussed.
It appears, from the hill of exceptions, that the defendants Ward and G. S. Powell, when they respectively signed the bond, declared that they did so upon the condition that they should not be bound unless Robert W. Powell should also sign it. Nothing is said in the bill of exceptions about delivery, but it is fair to infer that each of them, at the time he signed the bond, delivered it upon the condition stated. But it does not appear, nor is there anything from which it can be inferred, to whom either of them delivered the bond, or how it came to the possession of the obligee.
W7hen a bond is delivered as an escrow to a person who is no party to it, to take effect as a bond upon the happening of some event or the performance of some condition, it cannot possibly take effect until such event happens, or such condition is performed. The party to whom the bond is entrusted by such conditional delivery has no authority to make a delivery of it to the obligee, except the event happens or the condition is performed; and when the obligee accepts a delivery from him he must see to it that he pursues his authority. If, therefore, the person to whom a bond is thus entrusted delivers it to the obligee before the event happens or the condition is performed on which he was to deliver it, it will not take effect. And it matters not that the obligee had no knowledge of the condition which the party attached to the delivery of the escrow. The condition is valid, whether known to the obligee or not. It is a question of power in the person who delivers the bond to the obligee, and not a question of good faith in the obligee in accepting the delivery. The condition imposes a limit upon the authority of the person *811 to whom the bond is entrusted, and a delivery by him to the obligee, in violation of the condition, is a delivery without authority, and'has no effect. 2 Wash. Real Prop. 585, § 44; Berry v. Anderson, 22 Indiana R. 36; Black v. Shreve, 2 Beasley R. 455; Smith & ux. v. South Royalton Bank, 32 Verm. R. 341. In the last of these cases the subject is fully discussed, on principle and authority.o
But suppose a bond, instead of being delivered by a party who signs it to one who is a stranger to it, as in the case just supposed, is delivered by him to one of his coobligors—for example, to the principal—upon condition that he shall not be bound except in a certain event, or upon a certain condition, are the same principles to be applied to such a case as to a case in which a conditional delivery is made to a third person, who is an entire stranger to the instrument; in other words, can a bond be delivered as an escrow or upon a condition to the principal or any other co-obligor ? Upon this subject different views have been entertained. In some cases it has been held, that delivery upon a condition may be made to a co-obligor, and that the instrument, though delivered by him, will not take effect until the condition was performed. Pawling v. United States, 4 Cranch R. 218; Lovett v. Adams, 3 Wend. R. 380; Reid v. Bibb, 5 Alab. R. 281; State Bank v. Evans, 3 Green R. 155; Fletcher v. Austin, 11 Verm. R. 447; People v. Bostwick, 32 New York R. 445.
In other cases it has been held, that a paper cannot be delivered upon a condition to one of the co-obligors, and that if a party delivers an instrument to one of his coobligors to become his bond upon a condition, and the person to whom it is so entrusted delivers it to the obligee before the condition is performed, the party will be bound, unless the obligor had notice of the condition, and that the delivery was unauthorized. Millett v. Parker, 2 Met. *812 Ky. R. 608; State v. Peck, 53 Maine R. 284; Deardorff v. Foreman, 24 Ind. R. 481.
It is not necessary to consider this question in respect to instruments which are apparently, on their face, complete and perfect, according to the intention of the parties. It is only necessary to consider it in reference to instruments such as that in the present case, which indicate on their face that they are not complete, and that it was intended that other signatures should be affixed. The cases cited from 63 Maine and 24 Indiana confine the principle which they maintain to instruments which, on their face, are apparently complete and perfect, according to the intention of the parties. If the principle of those cases is a sound one in respect to such instruments, as to which I am not called upon to express an opinion, I am of opinion that it cannot be applied to an instrument which, upon its face, indicates that it is not complete, according to the intention of the parties, and that other persons were intended to execute it. Such was the ease in Pawling v. United States. The face of such a paper puts the obligee on his guard. He ought to enquire when such a paper is offered to him, and to satisfy himself that the original intention of the parties, as indicated on the face of it, has been relinquished. If he fails to make such enquiry, and accepts the paper from the principal obligor, or from any one of the co-obligors, he has no right to complain if he is met by a plea, from another of the obligors, that he. signed and delivered the paper upon the condition indicated on its face. There is all the more reason for such enquiry when the paper is presented by the principal obligor, for he has a manifest interest to deliver the paper without the other names, which he may not be able to obtain. A contrary rule would put it in the power of a principal obligor, or of one of the obligors who may be disposed to favor him, to commit the grossest frauds upon *813 the other obligors. It would make it necessary, in every case, to employ a third person to obtain the signatures, or for all the obligors to execute the paper at one and the same time. The principle which is often stated, that when one of two innocent persons must suffer by the act of a third, the one who has put it in the power of such third person to occasion the loss, ought to bear it, has no just application to such a case, because, if there be no other reason, the obligee is put upon his guard by the face of the paper.
When the instrument is delivered directly to the obligee, the delivery cannot be regarded as conditional in respect to the party who makes it, unless the condition is made known to the obligee. .Although the face of the paper indicates that it was intended originally that other persons should sign it, the obligee has a right to infer from the unconditional delivery, that the original intention has been relinquished by the party who makes the delivery. If the delivery is upon a condition made known to the obligee, his assent to it will be presumed from the acceptance of the instrument, and he will not be allowed to repudiate the condition thus assented to, and to treat the delivery as absolute and unconditional. In Millett v. Parker, above cited, it„was held that the same principle must be applied where the delivery is made by any one of the obligors, because all the obligors together constitute one party, and the obligee the other. But the rights of the obligors are several and distinct, and neither is bound except so far as he has consented to be. Neither is bound without a delivery of the instrument, and one obligor has no right to deliver it for another without his authority. And besides, if an obligee who receives an instrument from one of the obligors, which is apparently complete and perfect, has a right to presume that all the obligors have authorized its delivery, he has not the same right to make that presump *814 tion when the instrument, on its face, is incomplete and imperfect.
It was further said in Millett v. Parker, that a bond cannot be delivered to a co-obligor as an escrow, because, while it remains in the hands of the obligors, or any one of them, it imposes no obligation whatever, whereas an escrow is so far binding on the party who has delivered it as such, that he cannot revoke it, and the obligee is entitled to it when the condition is complied with. But this assumes, as a ground of decision, that a bond, while it remains in the hands of either of the obligors, can have no operation whatever; which is the very point of controversy. While the bond remains in the hands of the obligors, or any of them, without any delivery, it has and can have no effect. But a bond may be valid though the obligor has never parted with the possession of it, if such be his intention, and he has done that which, in law, amounts to a delivery. Smith on Contracts (Rawle’s Ed.) 11 and cases cited. And the question is, whether one obligor may not deliver a bond to another obligor, on a condition that it shall take effect only in a certain event.
. It follows from these principles, that if the court had instructed the jury that if they believed, from the evidence, that the defendants, Gr. S. Powell and A. J. Ward, delivered the bond to a third person not a party to it, or to one of the other obligors, on condition that it should not take effect as their bond unless executed by Robert W. Powell, such condition would not affect the rights of the plaintiff unless it was known to him when he received the bond, the instruction would have been erroneous. And it would have been equally erroneous to instruct the jury that such a condition would not affect the rights of the plaintiff unless known to him, in case the jury should believe, from the evidence, that the bond was delivered by the said Gr. S. Powell and A. J. Ward, upon the condition *815 mentioned, without saying to whom delivered. For an instruction in that general form would have been applicable to the case of a conditional delivery to a stranger or to one of the co-obligors.
Such being the principles applicable to the case, I come now to consider the instruction asked by the defendants. It will be observed that the language used is “ executed on condition,” and not “ delivered on condition.” If the latter expression had been employed, the instruction, so far, at least, as relates to the defendants, Geo. S. Powell and A. J. Ward, would have been in strict conformity to the principles which govern the case. In what sense, then, were the words, “ executed on condition,” employed in the instruction ? In one sense a bond may be said to be executed when it is signed, while in another sense the execution embraces both signing and delivery. The pleas, as we have seen, allege that the bond was “ delivered on condition.” Construing the instruction with reference to the issues made up on these pleas, and to which the instruction was intended to apply, the language of the instruction ought probably to be understood as referring not only to the signing of the paper, but to the delivery, which was a part of the execution. And so it seems to have been understood by the court below, which only proposed to modify the instruction, by adding that the condition, in order to affect the rights of the plaintiff, must have been known to him. But if this was not the obvious meaning of the instruction, the jury, bearing in mind the issues which they were trying, might well have placed that construction upon it, and the refusal to give it was calculated to mislead the jury. And especially was the refusal to give the instruction calculated to mislead the jury, from the explanation which the court gave of the grounds of the refusal, which showed that the court did not consider it objectionable, because it referred only to the signing of *816 the paper, and not to its delivery. If, therefore, the language of the instruction was equivocal, the court should not have refused it, but should have given it with such an explanation of its meaning as to ensure its being understood by the jury in the proper sense, unless it was liable to objection on the other ground to be hereafter considered. Balt. & Ohio R. R. Co. v. Polly Woods Co., 14 Gratt. 447; Peshine v. Shepperson, 17 Gratt. 472; Rosenbaums v. Weeden & Co., supra, 785.
But it is contended, that the instruction was properly refused, on the ground that it proposed to say to the jury that, in the case supposed, they must find for “ the defendants,” meaning all the defendants, whereas, there was no evidence of a conditional delivery by Jackson B. Powell; and, under the statute, the verdict and judgment might be against him, though in favor of the other defendants. This objection cannot be sustained. The bond purports to be the joint bond of all the parties. The presumption from the face of it is, that Jackson B. Powell intended to be bound along with the other parties by whom it was executed, and not severally. There was no evidence, as far as this bill of exceptions shows, to counteract this presumption. In this state of the case, there was no ground on which the jury would have been justified in finding a separate verdict against Jackson B. Powell. It is, there■fore, unnecessary to consider the construction and effect of the provisions of the Code (ch. 172, § 49, and ch. 177, § 19,) referred to by the counsel for the defendant in error. Besides, if it was necessary to take that view, we might be justified in construing the words, “ the defendants,” as referring only to the defendants mentioned in the instruction and in the bill of exceptions, namely, George S. Powell and A. J. Ward.
I am of opinion to reverse the judgment of the District Court.
*817 The other judges concurred in the opinion of Joynes, J.
The following is the judgment:
The court is of opinion for reasons stated in writing &c., that if the bond in the declaration mentioned was delivered by the plaintiffs in error George S. Powell and A. J. Ward, either to a third person, not a party to the said bond, or to the principal, or any other obligor, upon condition that the same should not take effect as their bond unless the same should be executed by Robert W. Powell, whose name is recited therein as a co-obligor, then the said plaintiffs in error are not bound by the said bond, the said condition not having been complied with; and that it is not necessary to give effect to the said condition that the same should have been known to the defendant in error when the said bond was delivered to him.
And the court is further of opinion, that if the said bond was delivered to the defendant in error on a condition that it should not be binding on the-said plaintiffs in error unless the same should be signed by said Robert W. Powell, and the said condition was known to the said defendant in error, then the said plaintiffs in error are entitled to insist upon the benefit of said condition, and the said defendant in error is not entitled to recover on the said bond.
The court is further of opinion, that if the word “exe-' cuted” in the instruction asked for by the said plaintiffs in error on the trial, was used and understood in the sense of “delivered,” as seems to the court to be probable,then the said instruction should have been given to the jury as asked, and without the addition proposed by the court. But if the meaning of the said instruction in this respect was equivocal, the jury might well have understood that the word “ executed ” was used in the said instruction in the sense of “ delivered,” and the court erred in refusing *818 the instruction, because such refusal was calculated to mislead the jury, and the court, instead of refusing the said instruction, should have amended it so as to ensure its being understood by the jury in the proper sense, and to have given it to the jury as so amended.
Therefore erroneous and reversed with costs, &e., remanded for new trial in conformity with the principles above declared.
Judgment reversed.