Staples, J.,
delivered the opinion of the court.
This case was before the court at the July term, 1873, held in Wytheville, and is reported in 24 Gratt. 202.
After the case was remanded to the circuit court, for a new trial to be had in conformity with the views of this court, the defendants tendered five pleas in writing, two of which were objected to by the plaintiff; but the objection was overruled by the court, and the pleas filed. The parties then proceeded to trial on the issues joined on the five pleas so filed.
When the evidence was concluded, the defendants asked for two instructions, to which the plaintiff objected ; but ■ the objection was overruled, and the instructions given; and the plaintiff again excepted.
In order to properly understand the bearing of these instructions, it is necessary briefly to advert to the point settled by the former decision of this court. No question was then raised as to the completeness of the instrument. It was assumed both in the pleadings and in the instructions given by the circuit court, that the bond in controversy at the time of its delivery to the obligee by the principal obligor, was in form a complete and perfect instrument, and that the obligee had no notice of the al *601 leged condition upon which the sureties had signed the b r ° same.
This court held, that where the surety intrusts the to the principal obligor, and there is nothing on the face of the paper to indicate that others are also to sign as sureties, the obligee cannot be affected by any agreement or understanding between the principal obligor and the surety, that others were also to sign before delivery, unless it was made to appear that the obligee at the time that he received the bond had notice of the condition upon which the surety had so signed.
This decision was based mainly upon the ground that as the surety gave confidence to the representations of the principal obligor, he must stand the hazard of their performance, and he cannot implicate the obligee in any responsibility in the matter unless the latter is guilty of fraud or gross negligence in accepting the security.
The instructions, already alluded to, given by the circuit court on the last trial, were intended to present to the consideration of the jury questions relating to the signing and delivery of the bond in controversy not passed upon by this court in the former decision.
One of these instructions, known in the record as the sixth, declares that if the bond in controversy was signed by the defendants as sureties, and delivered to the principal obligor, on condition that other persons were also to sign as sureties, and that if the principal obligor delivered the bond to the plaintiff without such other persons having so signed, and the plaintiff, at the time he received the bond, had notice of the condition, the plaintiff is not entitled to recover.
This instruction, it will be perceived, assumes that the bond is a complete and perfect instrument upon its face, but that it is invalid in the hands of the obligee, if he had notice of the condition on which it was signed by the defendants.
*602 The other instruction, known as the seventh, affirms that if the defendants signed the bond on condition that other persons besides the defendants were also to sign as sureties, and such persons did not in fact so sign, and if, at the time of the delivery of the bond to the plaintiff, there were scrolls on the bond, so placed as to indicate that others were to sign as co-obligors, but to which no names were attached, the condition not being complied with on which the defendant signed the bond, the instrument, as to them, is invalid, and the plaintiff cannot recover.
It will be observed that this instruction says nothing of the alleged notice to the plaintiff of a conditional delivery. The proposition asserted is, that the mere fact that there are seals on the paper, to which no names are attached, plainly indicate ihat the instrument, on its face, is incomplete and of itself sufficient to raise a presumption- that others were to sign it beside the defendants; and this warrants the admission of testimony that such was the agreement of the parties, although the obligee may in fact have been ignorant of the condition.
These two instructions were based on the sixth and seventh pleas. The pleas and instructions may, therefore, be considered together. In so considering them, it will be more convenient, first, to examine the proposition contained in the last instruction; and that is, a bond perfect in form, apparently duly executed by all whose names appear thereon, but which has on it scrolls to which no names are attached, is, on its face, an incomplete and imperfect instrument.
This precise question has never been decided by this court; at least there is no reported case. In Hicks v. Goode, 12 Leigh, 479, 492, Judge Cabell, in delivering the opinion of the court, did not place the decision on the ground that the instrument contained a scroll to which no name was attached. He does not even advert to the fact as material. It was to the language of the instrument, *603 and to the fact that the name of one of the parties who did. not sign was inserted in the body of the bond, he looked exclusively. From this he came to the conclusion that the-instrument was incomplete, and plainly indicated on its face that some other person was to sign it before it could take effect as a valid obligation.
The decision in Ward et als. v. Churn, 18 Gratt. 801, proceeded substantially on the same ground. The incompleteness of the instrument there was inferred from its language, from the whole tenor of the writing, and not from the fact that there was a scroll without a name attached.
In the case before us, the names of none of the contracting parties are inserted in the body of the bond. It is signed by the principal obligor and nine others, claiming to be sureties. It is the joint and several obligation of all executing it. As to them, it is a complete and perfect instrument. There is nothing in its form or language to indicate that other persons were to sign it before it could take effect as to parties who have signed. Does the fact that there are scrolls to which there are no names render the instrument incomplete, or even tend to show an agreement that other parties were to sign, in order to give effect to the bond? It may be a circumstance to be considered, in connection with other evidence, showing that the obligee had actual knowledge of the agreement, but of itself is not sufficient to put him upon enquiry, or even to create a suspicion of the existence of such an agreement. The scrolls may indicate that, at the time the instrument was prepared, the obligee required that number of securities, or that the principal obligor expected or intended to procure them. Sometimes the bond is prepared by the obligee himself, and sometimes by the principal obligor.
Upon a contemplated loan of money or sale of property, quite often, as otherwise, the number of seals is purely accidental—attached to the writing simply with the view of *604 procuring a sufficient number of obligors to make the se- . . ° curity satisfactory to the obligee. That object is effected, unfrequently, with fewer signatures than there are scrolls, and the obligee, being content with the security, accepts the bond without a suspicion that the principal ob-delivering it, is violating any agreement or transcending his authority.
In the case of personal representatives, and other fiduciaries, as also commissioners for the sale of lands and the investments of funds under decrees of court, this sort of transactions are of frequent occurrence. Indeed, throughout Virginia the practice is most common among all business men of accepting such securities without a suspicion of any informality in them. It is impossible to foresee the inconvenience and mischief that will ensue if the courts should establish the doctrine that the mere existence of one or more seals upon a bond without names opens the door to proof of parol agreements or alleged agreements between the several obligors—principal and sureties—which, will invalidate the bond, as to such sureties, in the hands of an innocent holder. And it is worthy of observation, that the researches of counsel have not produced a single case sustaining their doctrine. See Williams v. Springs, 7 Ired. N. C. 384, and cases there cited.
For the reasons already stated, I think the bond in controversy is apparently a complete and perfect obligation, with nothing on its face to indicate that other persons were to sign it to make it effectual as to those who did sign it. It follows that the circuit court erred in giving the 7th instruction asked for by the defendant.
The proposition laid down in the 6th instruction is now to be considered; and that is a bond apparently perfect and complete may be avoided by parol proof, that the obligee, at the time he received it from the principal obligor, had notice that other persons were to sign it in order to make the instrument effectual ás to those who did sign it.
*605 The counsel for the plaintiff maintains that such proof * A is inadmissible under the well-established rule of law that parol testimony cannot be received to invalidate or affect written contract. In this connection, the counsel rely mainly upon the case of Miller v. Fletcher, 27 Gratt. 403, in which it was held that where a deed, perfect on its face, is delivered by the obligor directly to the obligee, it is not competent to prove by parol evidence that the delivery was upon a condition which has not been complied with; and it matters not that the obligee is fully apprised of the condition at the time. And learned counsel insist that there is no substantia] distinction between a delivery directly to the obligee by all the parties signing the paper and a delivery by part of them to the principal obligor and by the latter to the obligee. In either case, the delivery is absolute and the condition void.
A moment’s reflection will, however, show there is a wide distinction between the'two cases. A deed cannot be delivered as an escrow to the party on whose behalf it is made; no matter what may be the form of the words used, the delivery is absolute, and the deed takes effect immediately. An escrow, on the other hand, ex vi termini, is a deed delivered to some third person, a stranger, to be by him delivered to the grantee, upon the performance of some condition. When the books speak of the delivery to a stranger as an essential to an escrow, it is in contradistinction to a delivery to the party in whose behalf the deed is made. Thus in Sheppard’s Touchstone, vol. 1, p. 58-59, it is said, the deed must be delivered to one that is a stranger to it and not to the party himself to whom it is made.
One of the reasons of this rule is said to be, “ The delivery to the party is sufficient without the speaking of any words; and when the words are contrary to the act, which is the delivery, the words are of no effect.” This reason has, obviously, no sort of application to the case of a surety *606 whet makes a conditional delivery to the principal obligor. ... J r r •& The principal in such case is not the agent of the obligee but of the surety, who intrusts the bond to the principal on the faith of the latter’s representation. If the delivery to one who is an entire stranger to the instrument is consistent with its terms, it would seem that the delivery to a co-obligor is equally so. For although the latter is a party, he is not the party to whom the deed is made. A delivery to a co-obligor without words will give no more effect to the instrument than to a stranger without words. See State Bank at Trenton v. Evans, 3 Green New Jersey R. 155.
There are cases, however, that hold that a bond cannot be delivered to. a co-obligor as an escrow. One of those is the noted case of Millett v. Parker, 2 Metc. Ky. R. 608; and the reason there given is, that while it remains in the hands of the obligor, it imposes no obligation whatever; whereas, an escrow is so far binding'on the party who has delivered it that he cannot revoke it. This view is controverted by Judge Joynes in Ward v. Churn, 18 Gratt. 801, 814. It is not important now to enquire which of' these views is correct, as the point does not affect the decision of the question here. In Millett v. Parker, the court, after an elaborate discussion of the principles governing the conditional delivery of deeds, says: “ If the obligee had been apprised of the existence of the agreement, he would have acted in bad faith in accepting the covenant when it was offered to him by the principal obligor; but being ignorant that any such agreement had been made' by the' obligors, he had the right to presume that the instrument had been prepared for his acceptance, and that the obligor who had it in his possession was authorized to deliver it to him.”
That case concedes, as will be observed, that a bond, complete on its face, delivered to a co-obligor on a condition that had not been complied with, may be avoided in *607 the hands of an obligee, upon proof he had notice of the ° 1 A r condition.
There are two classes of cases widely dissimilar in doctrines they hold on this question. On one side it is held, that if the sureties deliver a bond to the principal, perfect on its face, upon a condition not performed, and the latter .in violation of the agreement, delivers the bond to the obligee, the sureties are not bound, although the obligee may not be apprised of the condition. On the other hand, there are numerous cases which hold that such an instrument cannot be avoided in the hands of the obligee where it appears he was not informed of the condition at the time that he received the bond. And so this court held in this case, when it was before us ón a previous occasion.
That decison was not based upon any idea of the incompetency of parol testimony to establish the facts; but upon the ground that" the surety having intrusted the bond to the principal obligor, the obligee had the right to infer that it was for the purpose of delivery; and the surety was estopped to set up a limitation upon the power of the principal unknown to the obligee. See also Dain v. United States, 16 Wall. U. S. R. 1.
There are no cases—certainly none I have seen—which hold that parol testimony is inadmissible to establish the notice as well as the conditional delivery to a co-obligor. There are, however, a multitude of decisions which expressly, or by strong implication, recognize such testimony as admissible. State v. Peck, 3 Maine R. 284; Smith v. Moberly, 10 B. Monr. R. 266; Bank v. Goss, 31 Verm. 315; Black v. Lamb, 1 Beasley R. N. J. 108; Blume v. Bowman, 2 Ired. R. 341; Butler v. Smith & Thark, 35 Miss. R. 457; Deardorff v. Foresman, 24 Ind. R. 481; Quarles v. The Governor, 10 Hump. R. 122; Ricketts v. Pendleton, 14 Maryl. R. 320; Pawling v. United States, 4 Cranch, 219; Bibb v. Reid, 3 Alab. R. 88; Perry v. Patterson, 5 Humph. R. 133.
*608 '^'^e ^Gcision in all these eases is founded in part upon the idea that the obligee is guilty of fraud in receiving the if he has notice that the delivery is in violation of the agreement of the parties. Fraud practiced by the party seeking the remedy, upon him against whom it is sought, and in that which is the subject matter of the action or claim, is universally held fatal to his title. “The covin,” said Lord Colee, “ doth suffocate the right.” Underwood v. McVeigh, 23 Gratt. 409, 424; 1 Greenl. Evi. 284.
From the very necessity of the case, parol testimony-must often be resorted to for the purpose of establishing the fraud. A judgment or decree may be set aside upon parol proof of fraud in obtaining it. The title of a purchaser under the most solemn deed may be defeated by showing he is a purchaser with notice. The most impartial transactions of mankind are founded upon faith in human testimony. If all enquiry into the truth is prohibited because men sometimes commit perjury, the most flagitious conduct would find security and protection when ever the offending party has been so fortunate or unscrupulous as to procure written evidence of his claim.
The rule which prohibits the admission of parol testimony to vary a deed or other writing is not infringed by the introduction of evidence relating to the delivery of the deed. Such evidence does not tend to contradict the deed or the recitals therein, but merely to show there has been no valid delivery. In Towner v. Lucas, 13 Gratt. 705, Judge Allen discusses with much learning and ability the rule of the common law respecting the admission of parol evidence where there is a written contract, and he distinguishes between the classes on that subject. In the course of his opinion, he said, “ The fraud which will let in such proof must be fraud in the procurement of the instrument which goes to its validity, or some breach of confidence in *609 using a paper delivered for one purpose and fraudulently perverting it to another.
In such cases, the oral evidence tends to prove independent facts, which, if established, avoids the effect of the written agreement by facts dehors the instrument, but do not tend to contradict or vary it. P.715-716. And in Woodward, Baldwin & Co. v. Foster, 18 Gratt. 200, 207, •Judge Joynes, in discussing the same subject, says, “So it has been held that between the immediate parties evidence may be given of a cotemporaneous agreement consistent with the written contract; as, for example, that the bill was endorsed and handed over for a particular purpose, as for collection, without giving the trustee the usual rights of an endorsee—Manley v. Boycot, 75 Eng. C. L. R. 45—or that the bill was transferred as an escrow or upon an express condition which has not been complied with.
Such cases are subject to the ordinary rules applicable to the admission of parol testimony in reference to written •contracts. Under these rules, it is always competent to show a want of consideration or fraud as between the iinmediate parties, in order to complete the contract. In support of this view, the learned judge cites a number of English decisions.
In a late case before the supreme court of the United States, Mr. Justice Field said: The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties; that cannot be qualified or varied from its natural import, but must speak for itself. The rule does not prohibit an enquiry into the object of the parties in executing and receiving the instrument. Brick v. Brick, 8 Otto R. 514. Indeed, it seems to be well-settled that whatever relates to the point of execution, whether tending to show the time of delivery, or that the delivery is in the nature of an escrow, or to disprove it altogether, may be established by parol. '
*610 This species of evidence has been considered as coming within the rule which prohibits parol proof to contradict a deed. 2 Phillips on Evi. 553, 557, 577, 634. If, for example, a bond should be signed, and left with the scrivener to be signed by other persons before it is delivered to the obligee, and is taken clandestinely and delivered to the obligee, who is aware of all the circumstances, all will concede that the writing would not preclude the parties from showing the real facts of the transaction, and that the writing itself was being prostituted to purposes of fraud. And yet there is little difference between the case supposed and the case of an obligee who receives the bond from one of the obligors, knowing the latter has no authority to make the delivery. Such evidence does not contradict the deed, but establishes a want of authority in the agent and knowledge of that fact by the obligee.
Numerous other illustrations might be given, but it is unnecessary. I think, therefore, the circuit court did not err in giving the 6th instruction asked for by the defendants. But while parol evidence is properly admissible for the purpose of establishing that the bond was executed on a condition which has not been performed, and that the obligee had notice of the fact, such evidence, where there is nothing on the face of the paper to put the obligee on his enquiry, ought to be very clear and satisfactory.
The history of this case from its inception abundantly shows the necessity of caution in listening to such evidence. The defence set up in the sixth and seventh pleas seem never to have been thought of until the decision of this court overruling the main points upon which defendants formerly relied. And one of the defendants, offered as a witness and now relied on to prove the notice to the plaintiff, in his examination of 1871, made no mention of any fact from which it would be inferred the plaintiff had notice of the alleged condition attached to the execution of the bond.
*611 Whether the jury believed this witness, and rendered their verdict under the impression the plaintiff had such notice, it is impossible to say. They might have been satisfied the plaintiff was ignorant of the condition, and yet, under the sixth instruction, still have found a verdict for the defendants. The judgment of the circuit ccurt must, therefore, be reversed, the verdict set aside, and a new trial awarded. Upon which new trial, the circuit court will decline to give the defendants seventh instruction if again asked for, but instruct the jury in conformity to the views herein presented.
Before concluding the opinion, it is proper to notice the sixth and seventh pleas offered by defendants and objected to by the plaintiffs.
The seventh plea is an affirmation or statement of the proposition contained in the sixth instruction, and, according to the views already expressed, prevents a substantial defence to the action.
The sixth plea, however, is not free from difficulty. It is not very clear whether that plea was designed to aver actual notice to the obligee of the condition, or whether it was intended to declare a mere presumption of notice from the fact there were seals on the paper to which no names were attached. If the latter be the proper construction, the plea was clearly erroneous, for the reasons already stated; if the former, the plea conforms to the sixth instruction, and is therefore a valid defence.
Perhaps, under all the circumstances, it would be safer to hold that the plea was intended to aver actual notice to the obligee, and thus give the defendants the benefit of any defence arising under it. It is, however, not very material either way, as the whole case is fairly presented by the instructions, and may hereafter be disposed of in the same way.
For reasons already stated, the judgment of the circuit court must be reversed, and the cause remanded for a new trial, in conformity with the views already expressed.
*612 The judgment was as follows :
This cause, which was pending in this court at its place of session in Wytheville, having been fully heard, but not determined, at said place of session, this day came here the parties, by their counsel; and the court, having maturely considered the transcript of the record' of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the ■circuit court erred in giving to the jury the seventh instruction set out in the first bill of exceptions of the plaintiff in error.
Therefore, for the error aforesaid, it is considered that the judgment of the said circuit court be reversed and annulled, and that the defendants in error do pay to the plaintiff in error his costs by him expended in the prosecution of his writ of error aforesaid here.
And this court, proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that the verdict of the jury be set aside, and a new trial awarded the plaintiff in error; upon which new trial the said circuit court will decline to give said seventh instruction, if again asked for by the defendant in error.
And it is ordered that this order be entered in the order book here, and forthwith certified to the clerk of this court at Wytheville, who shall enter the same in his order book and certify it to the said circuit court of Russell county.
Judgment reversed.